UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| COMMUNITY STATE BANK | § | CIVIL ACTION 18-4078 |
| | § | |
| *Plaintiff* | § | |
| | § | |
| VS. | § | |
| | § | |
| MAXINE WILSON, | § | JUDGE SUSAN HICKEY |
| CARRIE W. WINFORD, Administratrix | § | |
| for the Estate of Jennifer Harting Wilson, | § | |
| and J. SCHUYLER MARVIN, | § | |
| District Attorney | § | |
| | § | |
| *Defendants* | § | MAGISTRATE JUDGE _____ |

## DEFENDANT J. SCHUYLER MARVIN'S ANSWER TO THE AFFIRMATIVE PLEADINGS IN THE "ANSWER IN INTERVENTION" OF GARY WILSON

### I. Introduction.

Intervenor Gary Wilson is incarcerated in Louisiana.[1] He is accused of multiple crimes, including insurance fraud.[2] The insurance company paid the claim.[3] It appears that the money was deposited in one or more Louisiana bank accounts.[4] Thereafter, it was withdrawn from the Louisiana accounts.[5] It was deposited across the state line in Arkansas one day after Wilson's wife and child are thought to have committed suicide.[6]

---

[1] Answer in Intervention of Gary Wilson (Doc. 17) ¶¶ 26-27.
[2] Complaint for Interpleader of Community State Bank (Doc. 1), Ex. 5, esp. at 8 (discussing the insurance claim).
[3] *Id.* 8 (last para., sent. 2) ("He received a little over $132,000.00 from this claim").
[4] *Id.* 8 (last sent.) ("Jennifer and Gary Wilson both endorsed the checks issued from Allstate and at least $99,000.00 of the ill-gotten funds were deposited into Gary and Jennifer's JP Morgan Chase bank account").
[5] *Id.* 9 (para. 1).
[6] *Id.*

1

In his affirmative pleadings,[7] Wilson argues for three propositions. The first is that he is entitled to half the money under the community property laws of Arkansas—irrespective, it appears, of whether the money was lawfully obtained.[8] The second is that a Warrant of Seizure for Forfeiture, issued by a Louisiana court, is unlawful under Louisiana law.[9] The third is that the Warrant is unlawful under the Fourth Amendment of the United States Constitution.[10]

In addition, Wilson *states* four conclusions which he does not argue. The first is that Community State Bank ("CSB") "should be ordered to deposit the full value of the sums of money [in account 240054] into the registry of [this] Court".[11] The second is that CSB should thereafter "be dismissed from this action".[12] The third is that half the money in account 240054 should be awarded "to the Estate of Jennifer Harting Wilson to be administered in the opened Louisiana estate case".[13] The fourth is that this Court should "further deny the claims of Separate Defendant Marvin, if any".[14]

None of Wilson's arguments succeeds, and none of the unargued conclusions is sound. This answer considers each in turn.

---

[7] These appear as part of Intervenor's "Answer in Intervention". Doc. 17 ¶¶ 22-55. But, as Defendant Marvin has argued in his Motion for Leave to Answer the Affirmative Pleadings of Intervenor Gary Wilson (Doc. 20), they are really Intervenor's Complaint in Intervention.
[8] Doc. 17 ¶¶ 28-34 & 55.
[9] *Id.* ¶¶ 35-46.
[10] *Id.* ¶¶ 47-54.
[11] *Id.* ¶ 22.
[12] *Id.*
[13] *Id.* ¶ 55.
[14] *Id.*

## II. The Community Property Laws of Arkansas Do Not Entitle Wilson to Half the Proceeds of His Crimes.

The Arkansas statute governing the disposition of community property at death applies to *property*.[15] The statute defining the offense of laundering criminal proceeds shows that these are not the property of the criminal, but rather are subject to forfeiture.[16] A similar statute exists in Louisiana.[17]

Wilson *asserts*, but does not argue, that "[t]he funds which are the subject of this suit were derived from Intervening Defendant Gary Wilson's marital community property as defined and acknowledged by the State of Louisiana, which is a community property state".[18] No evidence that Louisiana has *acknowledged* that the funds are Wilson's is presented.[19]

In contrast, a sworn affidavit from Lieutenant Shannon Mack of the Bossier Parish Sheriff's Department makes a detailed case that the funds, or some large part of them, are the proceeds of a fraudulent insurance claim.[20] It also makes a detailed case that Wilson is

---

[15] Ark. Code Ann. 28-12-101 ("This chapter applies to the disposition at death of the following *property*" (emphasis added)). Subsections (1), (1)(i), (1)(ii), and (1)(iii) follow, and each refers to "property". *Cf.* Doc. 17 ¶¶ 29-31.

[16] Ark. Code Ann. § 5-42-204(a) ("[a] person commits the offense of criminal use of property or laundering criminal proceeds if the person knowingly: (1) Conducts or attempts to conduct a transaction involving criminal proceeds that were derived from any predicate criminal offense, with the intent to: . . . (C) Acquire any interest in the criminal proceeds"). Subsection (c) of the same statute permits a prosecuting attorney to institute a civil action for the criminal proceeds involved in a violation of subsection (a).

[17] La. R.S. 15:1356.

[18] Doc. 17 ¶ 32.

[19] *Id.*; *and see* ¶ 34 (concluding that Wilson is entitled to one-half the funds). There is no consideration of the source of the funds in any other paragraph.

[20] Doc. 1, Ex. 5, at 8-9. It is plausible that Wilson was a participant in this criminal scheme. However, this is not essential. The Arkansas statute refers generally to "criminal proceeds that were derived from any predicate criminal offense". *Supra* note 16. There is no requirement that they be proceeds of *one's own* offense.

guilty of numerous other crimes.[21] Under these circumstances, the Arkansas community property laws can hardly show that Wilson is entitled to half the bank account.

Indeed, if this Court were to award half the account to Wilson, it would risk short circuiting any effort in either state to return the proceeds of his crimes to the victims of those crimes.[22] The Court should decline to run that risk.

### III. The Action of the Louisiana Court is Lawful Under Louisiana Law.

The Louisiana court issued its Warrant pursuant to La. R.S. 15:1356 ("Civil remedies").[23] That statute provides that "[p]roperty subject to forfeiture under this Section may be seized by a law enforcement officer upon court process".[24] The requisite process is not specified.[25]

Although Section 1356 concerns "Civil remedies", Intervenor turns to the Code of *Criminal* Procedure to argue that, because of a lack of territorial jurisdiction, the requisite process was not provided[26]—or perhaps was not.[27] It is certainly wrong to import the criminal procedure required for a criminal warrant.[28]

---

[21] *Id.*, *passim.*

[22] Intervenor writes as if the alternatives were his keeping the money or forfeiture "to the law enforcement agency responsible for the seizure". Doc. 17 ¶ 37. But the Warrant for Forfeiture was issued pursuant to La. R.S. 15:1356. Doc. 1, Ex. 5, at 1 (para. 3) (referencing the statute). That statute provides that "[a]ny injured person shall have an in rem right or claim to forfeited property or to the proceeds derived therefrom superior to any right or claim the state has in the same property or proceeds". § 15:1356(A)(1). The alternative to Wilson's keeping the money is therefore, in the first instance, the return of the money to the victims.

[23] Doc. 1, Ex. 5, at 1 (para. 3) (referencing the statute); § 15:1356 (title).

[24] La. R.S. 15:1356(B).

[25] *Cf.* Doc. 17 ¶ 44 (discussing the Louisiana Racketeering Act (La. R.S. 15:1351-1356) generally).

[26] Doc. 17 ¶¶ 45-46 (quoting and discussing La. C.Cr.P. art. 161).

[27] Intervenor recognizes that the argument is weak. His conclusion is only that, "*[i]f* the Louisiana Code of Criminal Procedure works to control the process . . . ," *then* the requisite process was not provided. Doc. 17 ¶ 46. *See also id.* ¶ 44 (looking first to the Louisiana Racketeering Act (La. R.S. 15:1351-56), which contains the section (La. R.S. 15:1356) providing for "Civil remedies").

[28] La. R.S. 15:1356(D) says that "[t]he district attorney may institute *civil proceedings* under this section" (emphasis added). Civil proceedings are governed by rules of civil procedure. Further, "[a] civil action is a demand

4

The statute providing for the *civil* remedy of asset forfeiture also provides that "[a]ny injured person shall have an in rem right or claim to forfeited property or to the proceeds derived therefrom".[29] In this case, the Louisiana court is asserting in rem jurisdiction, and it is doing so after being "satisfied from the affidavit submitted . . . that the aforesaid monies are subject to possible forfeiture".[30] That is "court process"—and no *further* process is required by the statute.

### III. The Action of the Louisiana Court is Lawful Under the Fourth Amendment.

Intervenor says that "the issue of whether an extraterritorial state search and seizure warrant would satisfy the Fourth Amendment has not been directly answered by a federal court".[31] However, seizures of precisely the kind at issue in this case have been considered and have been found to be lawful.

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.[32]

---

for the enforcement of a legal right". La. C.C.P. art. 421. It is immaterial whether the right exists in consequence of the commission of a crime.
[29] La. R.S. 15:1356(A)(1).
[30] Doc. 1, Ex. 5, at 1 (para. 2).
[31] Doc. 17 ¶ 48.
[32] U.S. Const. amend. IV.

5

In its terms, the Amendment imposes three requirements: (1). probable cause; (2). support by oath or affirmation; and (3). a particular description.

In the instant case, the Louisiana court was "satisfied . . . that there is probable cause".[33] The finding was made on the basis of a sworn affidavit.[34] The thing to be seized was particularly described as any "account associated with four cashier's checks" and the checks were identified by bank drawn on, number, amount, and endorser.[35] Every requirement belonging to the text of the Fourth Amendment is satisfied.

Because every textual requirement is satisfied, Intervenor must have some further contention—going beyond the text—in mind. It is this: the Fourth Amendment applies to *warrants*, but an extraterritorial 'warrant' is not really a warrant at all. Intervenor quotes Judge Gorsuch's dictum:

> For looking to the common law at the time of the framing it becomes quickly obvious that a warrant issued for a search and seizure beyond the territorial jurisdiction of a magistrate's powers under positive law was treated as no warrant at all—as *ultra vires* and *void ab initio* to use some of the law's favorite Latin phrases . . .[36]

The difficulty, of course, is that the *reach* of a court's powers is not fully defined by the limited notion of territorial jurisdiction. Courts have *extra*territorial jurisdiction in many instances. There is extraterritorial jurisdiction over vessels registered under the laws

---

[33] Doc. 1, Ex. 5, at 1 (para. 2).
[34] *Id.* 2 (para. 1) (the affiant was "first duly sworn") & 9 ("SWORN TO AND SUBSCRIBED").
[35] *Id.* 1 (caption) & 2 (caption).
[36] *United States v. Krueger*, 809 F. 3d 1109, 1123 (10th Cir. 2015). *Quoted in part by* Doc. 17 ¶ 50. Intervenor omits the dash.

6

of the United States; rocks containing deposits of guano; aircraft; spacecraft; places outside the jurisdiction of any nation; certain foreign vessels; and offenses committed by or against nationals of the United States.[37] Courts have extraterritorial jurisdiction over acts "which produce effects within the United States".[38] They have extraterritorial jurisdiction over acts *intended* to produce effects within the United States.[39] And they have extraterritorial, in rem jurisdiction over property.[40]

Judge Gorsuch of course knew this. He could not have intended to say that territorial jurisdiction *exhausts* the power of a court to issue a warrant. And his conclusion reflects that fact. He couched the *discussion* in terms of territorial jurisdiction (because that was the point at issue[41]), but his conclusion is a general one having to do with the *power* of courts. He says: "The principle animating the common law at the time of the *Fourth*

---

[37] 18 U.S.C. §§ 7(2), 7(4), 7(5), 7(6), 7(7), 7(8), & 7(9).

[38] *United States v. Noriega*, 746 F. Supp. 1506, 1512 (S.D. Fla. 1990), *citing Strassheim v. Daily*, 221 U.S. 280, 285 (1911) & RESTATEMENT (THIRD) OF THE FOREIGN RELATIONS LAW OF THE UNITED STATES ("RESTATEMENT (THIRD)") § 402(1)(c).

[39] *Noriega*, *supra* note 38, 1513 ("More recently, international law principles have expanded to permit jurisdiction upon a mere showing of *intent* to produce effects in this country, without requiring proof of an overt act or effect within the United States"), *citing United States v. Wright-Barker*, 784 F. 2d 161, 168 (3rd Cir. 1986); *United States v. Postal*, 589 F.2d 862, 886 n.39 (5th Cir. 1979), *cert. denied* 444 U.S. 832 (1979); & *United States v. Columba-Colella*, 604 F. 2d 356, 358, 360 (1979). *See also* RESTATEMENT (THIRD), *supra* note 38, § 402, Comment d.

[40] *Hotel 71 Mezz Lender LLC v. Falor*, 926 N.E. 2d 1202, 1208 (N.Y. 2010) ("a court with personal jurisdiction over a nondomiciliary present in New York has jurisdiction over that individual's tangible or intangible property, even if the situs of the property is outside New York"), *citing Koehler v. Bank of Bermuda Ltd.*, 911 N.E. 2d 825, [829-30] (N.Y. 2009). *United States v. All Funds on Deposit in Any Accounts Maintained in the Names of Meza or De Castro*, 63 F. 3d 148 (1995) (a district court had in rem jurisdiction over accounts in the United Kingdom), *cert. denied* 517 U.S. 1155 (1996). *See also* 28 U.S.C. § 1355(b)(1)(B) (providing for extraterritorial forfeiture actions) & 28 U.S.C. § 1355(d) (providing that "[a]ny court with jurisdiction over a forfeiture action pursuant to subsection (b) may issue and cause to be served in any other district such process as may be required to bring before the court the property that is the subject of the forfeiture action"). *And see United States v. Floyd*, No. 04-94-KSF, 2007 U.S. Dist. LEXIS 7588, at *6 (E.D. Ky. Jan. 30, 2007) (referring to 28 U.S.C. § 1355(d) and noting that, "[a]s a result, '[t]his national service of process provision clearly conferred *in rem* jurisdiction on district courts in forfeiture proceedings with respect to property located within another judicial district in the United States'"), *quoting Meza or De Castro* at 152.

[41] In *Krueger*, *supra* note 36, both property *and* person were in Oklahoma. *Krueger* 1111. The property was searched pursuant to a warrant issued in Kansas—or pursuant to consent secured because of the warrant issued in Kansas. *Id*. There was thus no territorial jurisdiction over the *person*, and therefore no question of *extra*territorial in rem jurisdiction.

*Amendment's* framing was clear: a warrant may travel only so far as the <u>power</u> of its issuing official."[42] It is *this* principle that he took to be "dispositive".[43]

And, in fact, it is *clear* that extraterritorial warrants for the seizure of funds are permissible under existing law. Such a warrant was at issue in *Meza or De Castro*.[44] The circuit court upheld the extraterritorial in rem jurisdiction of the district court.[45] The Supreme Court denied *certiorari*.[46] "The . . . judgment is now final."[47] Constitutional questions can be raised *sua sponte*,[48] but it appears that neither the court of appeals nor the Supreme Court saw a Fourth Amendment problem. It is clear that Congress agrees, since it has passed statutes specifically authorizing such jurisdiction.[49, 50]

---

[42] *Id*. 1124 (underscore added).

[43] *Id.* Judge Gorsuch quotes *United States v. Lefkowitz*, 285 U.S. 452, 464 (1932) for the principle that "for warrants to be valid they must emanate from 'magistrates <u>empowered</u> to issue' them". *Krueger*, *supra* note 36, 1124 (underscore added). And he quotes Thomas M. Cooley, THE GENERAL PRINCIPLES OF CONSTITUTIONAL LAW IN AMERICA 210 (1880) for the principle that "a warrant must issue from 'a court or magistrate <u>empowered</u> by the law to grant it'". *Krueger*, *supra* note 36, 1124 (underscore added).

In his use of the quotation from *Lefkowitz*, Judge Gorsuch goes beyond the *Lefkowitz* Court. See *infra* note 50.

[44] *Supra* note 40, at 150 ("Chief Magistrate Judge Chrein executed an order directing the issuance of an arrest warrant *in rem* for the funds, which was issued . . .").

[45] *Id.* 154 ("the district court properly asserted *in rem* jurisdiction in the instant case").

[46] *Supra* note 40.

[47] Lionel Smith, In Rem *Forfeiture Proceedings and Extraterritorial Jurisdiction*, 45 INT'L & COMP. L.Q. 902, 909 (1996).

[48] *Black v. Cutter Labs.*, 351 U.S. 292, 297 (1956) ("This Court . . . reviews judgments, not statements in opinions"); Allan D. Vestal, *Sua Sponte Consideration in Appellate Review*, 27 FORDHAM L. REV. 477, 479 (1958-59) ("the judges of the appellate courts generally feel that they have the right to go beyond the materials presented by counsel").

[49] *Supra* note 40.

[50] Intervenor's other cases are not to the contrary. None holds that extraterritorial in rem jurisdiction, in the *presence* of jurisdiction over the person and in the absence of a statutory bar, is unconstitutional.

Intervenor cites *United States v. Lefkowitz*, *supra* note 43. Doc. 17 ¶ 51. In *Lefkowitz*, "the only question presented" was whether certain searches and seizures were lawful as an incident to arrests. *Lefkowitz* 463. The holding was that "[a]n arrest may not be used as a pretext to search for evidence". *Id.* 467. The instant case does not involve any search for evidence incident to an arrest. The remark attributed to the Court by Intervenor—that "for warrants to be valid they must emanate from 'magistrates empowered to issue'"—is innocuous, and the attribution to the Court is wrong. What the Court actually said is only that "the informed and deliberate determinations of magistrates empowered to issue warrants as to what searches and seizures are permissible under the Constitution are to be preferred over the hurried action of officers and others who may happen to make arrests". *Id.* 464.

Intervenor cites *State of Ohio v. Jacob*, 185 Ohio App. 3d 408 (2009). Doc. 17 ¶ 52. The holding in *Jacob* was that "a violation of <u>statutory provisions</u> that a judge can issue a valid search warrant only within his or her court's

## IV. This Court Should Not Order CSB to Deposit the Money in Account 240054 into the Registry of the Court.

Wilson urges, but does not argue, that this Court should order CSB to deposit the funds at issue into the registry of the Court.[51] That would be an exercise of concurrent jurisdiction over property, and one that would subject CSB to conflicting orders of two courts. District Attorney Marvin has argued against the wisdom of such a course in his

---

jurisdiction is a fundamental violation of *Fourth Amendment* principles". *Jacob* 414 (underscore added). We have seen that in the instant case there is no such statutory provision. Further, *Jacob* involved "property, residences, and *residents* of another state". *Id*. 415-16 (emphasis added). It is thus far removed factually from the instant case, in which there is unquestioned *personal* jurisdiction over a resident of Louisiana.

Intevenor cites *State of Georgia v. Kirkland*, 212 Ga. App. 672 (1994). Doc. 17 ¶ 52. *Kirkland* has to do with whether *evidence* seized pursuant to an extraterritorial search warrant should be suppressed. *Kirkland* 672 ("This is the State's appeal of the trial court's grant of Kirkland's motion to suppress"). It did not pose the question of the constitutionality of extraterritorial in rem jurisdiction asserted by a court possessing personal jurisdiction.

Intervenor cites *Sanchez v. State of Texas*, 365 S.W. 3d 681 (Tex. Crim. App. 2012). Doc. 17 ¶ 52. *Sanchez* is like *Kirkland* in having to do with the suppression of evidence. *Sanchez* 683 (Appellant "filed a motion to suppress . . . blood test results"). Blood evidence was secured in one county on the basis of a warrant issued in another county. *Id*. 683. The court relied on the fact that "the Legislature . . . has consistently limited or elected not to expand the jurisdiction of statutory county courts". *Id*. 685. *Sanchez* did not pose the question of the constitutionality of extraterritorial in rem jurisdiction asserted by a court possessing personal jurisdiction in the absence of a statutory bar.

Intervenor cites *United States v. Master,* 614 F. 3d 236 (6th Cir. 2010). Doc. 17 ¶ 52. *Master* is like *Jacob* and *Sanchez* in relying on statutory law. *Master* 241 ("In this case, Judge Faris' authority to issue warrants stems exclusively from Tennessee law, but that same source of law provides that Judge Faris had no authority to issue a warrant for a search of Defendant's home. The search warrant therefore violated Defendant's *Fourth Amendment* rights" (underscore added)). It was like *Kirkland* and *Sanchez* in having to do with the suppression of evidence. *Id*. 237 ("Defendant Troy Master appeals the denial of his motion to suppress evidence found at his home during the execution of a search warrant"). The court did not order the suppression, but rather remanded for the application of a balancing test. *Id*. 243 ("While it appears at first blush that suppression might be inappropriate in this case, we will remand the case to the district court for the purpose of reexamining the facts and balancing the interests as required by *Herring* [*v. United States*, 555 U.S. 135 (2006)]"). *Master* did not pose the question of the constitutionality of extraterritorial in rem jurisdiction asserted by a court possessing personal jurisdiction.

Finally, Intervenor cites *Weinberg v. United States*, 126 F.2d 1004 (2nd Cir. 1942). Doc. 17 ¶ 52. *Weinberg* concerns a warrant which would have been unconstitutional even if *not* extraterritorial. *Weinberg* 1006 ("Even had the order in question been issued by the district court here, it would still be invalid." The Fourth Amendment is cited). The issuing court designated "J. Edgar Hoover, Director of the Federal Bureau of Investigation" and his agents as officers of the court. *Id*. 1005. The Second Circuit commented that the "protection of the citizen would be frittered away if a district judge, by simply designating a law enforcement agency as officers of his court, could obviate the strict procedure for obtaining a warrant". *Id*. 1006. The case is like *Master*, *Jacob*, and *Sanchez* in relying on statutory law. *Id*. ("The *Fourth Amendment* and the legislation governing search warrants, *18 U.S.C.A. §§ 611-625*, circumscribe the freedom with which government officers may search and seize" (underscore added)). It does not pose the question of the constitutionality of extraterritorial in rem jurisdiction asserted by a court possessing personal jurisdiction.

[51] *Supra* text accompanying note 11.

Amended Answer to Plaintiff's Complaint for Interpleader.[52] The Amended Answer is incorporated by reference, as if fully set forth verbatim herein.

## V. Because this Court Should Decline to Exercise Concurrent Jurisdiction, there Will Be No Need to Dismiss CSB from the Action.

Wilson urges, but does not argue, that, after CSB deposits the money into the registry of this Court, it should be dismissed from this action.[53] Because the better course is to decline the exercise of concurrent jurisdiction,[54] there will be no need to dismiss CSB.

## VI. This Court Should Not Award Half the Money to the Estate of Jennifer Harting Wilson.

Wilson urges, but does not argue, that half the money in account 240054 should be awarded to the estate of Jennifer Harting Wilson.[55] Presumably Wilson hopes the Court will believe that that is the appropriate disposition under the Arkansas law governing the disposition of community property at death.[56]

Precisely the same considerations that show that this Court should not award half the money to Gary Wilson show that it should not award half to the estate of Jennifer Harting Wilson.[57] The sworn affidavit of Lieutenant Shannon Mack makes it exceedingly plausible that the funds, or some large part of them, are the proceeds of a fraudulent insurance claim—and perhaps of other crimes.[58] The Arkansas community property laws

---

[52] Doc. 14 at 3-7.
[53] *Supra* text accompanying note 12.
[54] *Supra* § IV.
[55] *Supra* text accompanying note 13.
[56] *Cf.* Doc. 17 ¶¶ 28-34 (making an analogous argument that *he* is entitled to half).
[57] *Cf. supra* pp. 3-4 (§ II).
[58] *Supra* notes 20-21 & accompanying text.

do not convert the proceeds of crimes into community property.[59] Awarding them to the estate would reduce the likelihood that the victims of the crimes will be made whole.[60] The Court should decline to run that risk.

### VII. This Court Should Not "Further Deny the Claims of Separate Defendant Marvin, if Any".

Wilson urges, but does not argue, that the "Court should . . . further deny the claims of Separate Defendant Marvin, if any".[61] Marvin's "claims" are those of a person with a duty to "safeguard[] and preserv[e]" funds whose just distribution is to be determined by a court.[62] By law, only such funds as are not the property of innocent persons are available for any distribution to others.[63] Also by law, the victims of Wilson's crimes are the highest priority claimants in any distribution of the remaining funds.[64] This Court should allow District Attorney Marvin to play his custodial role, in the interest of a just distribution of the funds.

### VIII. Conclusion.

The restriction of the community property laws of Arkansas to *property* shows—what is obvious—that Wilson can be entitled to half the Community State Bank account only if the money is his property. The Arkansas law defining the offense of laundering criminal proceeds shows that the proceeds of criminal activity—Wilson's or another's—

---

[59] *Supra* notes 15-17 & accompanying text.
[60] *Supra* note 22 & accompanying text.
[61] *Supra* text accompanying note 14. It is remarkable that Wilson urges the denial of claims that he cannot *identify*.
[62] Doc. 1, Ex. 5, at 1 (para. 3).
[63] Doc. 14, text accompanying note 10.
[64] *Supra* note 22.

11

are not his property. The affidavit of Lieutenant Shannon Mack makes it exceedingly plausible that the contents of the account, or some large part of it, are the proceeds of criminal activity. This Court should decline the invitation to award half the account to Wilson. For the same reason, it should decline to award half the account to the estate of Jennifer Harting Wilson.

The Warrant of Seizure for Forfeiture was issued by a Louisiana court pursuant to La. R.S. 15:1356. That statute provides for *civil* remedies. It specifically contemplates in rem claims. In most circumstances it requires court process, but it leaves the process to the discretion of the court. In the instant case, the court considered a sworn affidavit and found probable cause. The warrant therefore comports with Louisiana law.

Extraterritorial in rem jurisdiction is compatible with the three textual requirements of the Fourth Amendment. It has also been found by the highest state court in New York,[65] and by federal district courts. It has been approved by a federal court of appeals, and, through denial of *certiorari*, by the Supreme Court. Congress has legislated accordingly—affirmatively providing for such jurisdiction in federal statutory law.

Intervenor Gary Wilson seeks the fruits of his crimes, and Defendant District Attorney Schuyler Marvin seeks to hold those fruits in trust until a Louisiana court can determine their just distribution. That court has ordered Community State Bank to surrender the funds to the District Attorney. It has ordered the District Attorney to "safeguard[] and preserv[e]" the funds until the court can make its determination.[66] It is

---

[65] *Supra* note 40.
[66] Doc. 1, Ex. 5, at 1 (para. 3).

bound by statute to restore funds to any innocent owner thereof and then to give precedence to the claims of the victims of the crimes.[67] It acted lawfully under Louisiana law and constitutionally under the Fourth Amendment.

This Court should decline to exercise concurrent jurisdiction, in the expectation that the bank will comply with the lawful order.

Respectfully submitted,

/s/ Patrick R. Jackson
Patrick R. Jackson
La. State Bar No. 25722
Patrick R. Jackson, APLC
4442 Viking Dr., #100
Bossier City, LA  71111
Telephone:  (318) 752-3335
Facsimile:  (318) 752-3315
pjackson@bossierlawoffice.com
ATTORNEY FOR DEFENDANT,
J. SCHUYLER MARVIN, District
Attorney for Bossier Parish

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served on all counsel of record to this proceeding on the 14th day of August, 2018, by this Court's CM/ECF Filing System.

/s/ Patrick R. Jackson
PATRICK R. JACKSON

---

[67] Doc. 14, text accompanying notes 10-11; *supra* note 22.