IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

COMMUNITY STATE BANK                                                      PLAINTIFF


v.                              Case No. 4:18-cv-4078


MAXINE WILSON; CARRIE W.
WINFORD, ADMINISTRATRIX
FOR THE ESTATE OF JENNIFER
HARTING WILSON; and J. SCHUYLER
MARVIN, DISTRICT ATTORNEY                                              DEFENDANTS


GARY WILSON                                                            INTERVENOR

## ORDER

Before the Court is Defendant J. Schuyler Marvin's Amended Motion to Dismiss.  (ECF

No. 75).  Intervenor Gary Wilson has responded.  (ECF No. 77).  Plaintiff Community State Bank

has also responded.  (ECF No. 78).  No other party has filed a response, and their time to do so has

passed.  *See* Local Rule 7.2(b).  Defendant Marvin has replied.  (ECF No. 79).    The Court finds

the matter ripe for consideration.[1]

## I. BACKGROUND[2]

This interpleader action arises as a result of the 26th Judicial District Court of Louisiana's

(the "Louisiana state court") issuance of a warrant of seizure for forfeiture of certain funds held in

a checking account by Plaintiff, a state-chartered banking corporation located in Bradley,

---

[1] The parties' briefing papers also incorporate by reference various arguments made in numerous past filings, some of which in turn incorporate arguments made in other filings.  (ECF Nos. 17, 35, 38, 44, 62-1, 66, 67).  The Court has reviewed all incorporated documents and will consider the same in determining the instant motion.

[2] The parties' briefing of the instant motion contains scarce discussion of the underlying background, so the Court's recitation of facts is taken largely from the parties' pleadings and various exhibits found in the record.

Arkansas. Plaintiff takes the position that the Louisiana state court lacks personal jurisdictional over it—an Arkansas bank holding money in Arkansas—and thus, the seizure warrant has no binding effect and should be treated as a competing claim for the funds that should be resolved in this interpleader case.

Beginning in October 2017, the Bossier Parish Sheriff's Office began investigating Intervenor Wilson and his family for suspected criminal activity. (ECF No. 70-5, pp. 2-9). At some point, the State of Louisiana brought criminal charges against Intervenor Wilson in what appears to be case number C-227668I, first for perjury and, later, for racketeering.[3]

On March 16, 2018, Defendant Maxine Wilson opened a checking account with Plaintiff by depositing five cashier's checks totaling $255,209.47 (the "Fund") that were payable to Jennifer Harting Wilson—Intervenor Wilson's wife. Defendant Maxine Wilson indorsed the checks based on a signed power of attorney granted to her by Jennifer Wilson. Plaintiff later learned that Jennifer Wilson was deceased.[4]

On April 27, 2018, the Louisiana state court served Plaintiff with a warrant of seizure for forfeiture of the Fund pursuant to Louisiana Revised Statute 15:1356, which, in relevant part, provides for forfeiture and disposition of money used in or obtained from conduct in violation of Louisiana's Racketeering Act. The warrant ordered Plaintiff to relinquish the Fund in the form of a cashier's check made out to the 26th Judicial District Attorney's Office in Bossier Parish, Louisiana, to be preserved and safeguarded by Defendant Marvin—the district attorney there—

---

[3] The record indicates that Intervenor Wilson was also charged with one count of insurance fraud in what appears to be criminal case number C-227668D, and that case was *nol prossed* on August 28, 2018. (ECF No. 75-2, pp. 1, 3-4). The perjury and racketeering charges remain pending against Intervenor Wilson. (ECF No. 44-2, p. 1).

[4] A copy of Jennifer Wilson's death certificate is found in the record, but the "date of death" section is darkened and illegible. (ECF No. 70-4). Ultimately, the specific timing of Jennifer Wilson's death is immaterial to the instant motion but, suffice it to say, she unfortunately passed away at some point.

until further order of the Louisiana state court.

On May 9, 2018, Plaintiff Community State Bank commenced this interpleader action to resolve competing claims to the Fund and later filed an amended complaint to bring this case under both Federal Rule of Civil Procedure 22 and the federal interpleader statute, codified at 28 U.S.C. § 1335.

On August 28, 2018, the Louisiana state court granted in part and denied in part a motion to quash the Louisiana seizure warrant. (ECF No. 44-1). Specifically, the Louisiana state court quashed the warrant as to $118,209.47 of the Fund. (ECF No. 44-1). The Louisiana state court left the warrant intact as to the remaining $132,000.00 of the Fund, "if [it] comes in possession of the State." (ECF No. 44-2).

From the onset of this case, Defendant Marvin has argued on multiple occasions that the Court should dismiss the case pursuant to various abstention doctrines. On January 29, 2019, the Court directed Defendant Marvin to file a formal motion to dismiss discussing the issue of abstention.

On March 26, 2019, Defendant Marvin did so, filing the instant motion. He argues that because the Louisiana state court has already asserted jurisdiction over the Fund, this Court should decline to exercise concurrent jurisdiction pursuant to the prior exclusive jurisdiction doctrine. Alternatively he argues that dismissal is appropriate under the *Colorado River*, *Pullman*, and *Burford* abstention doctrines. Accordingly, Defendant Marvin asks that the Court dismiss this case without prejudice. Plaintiff and Intervenor Wilson oppose the motion.

## II. DISCUSSION

Defendant Marvin moves, presumably under Federal Rule of Civil Procedure 12(b)(1),[5] for dismissal of this case based on four alternative abstention doctrines. The Court will begin by addressing Defendant Marvin's argument regarding the prior exclusive jurisdiction doctrine. If necessary, the Court will then address the arguments regarding *Colorado River*, *Pullman*, and *Burford* abstention.

### A. Prior Exclusive Jurisdiction Doctrine

Under the so-called doctrine of prior exclusive jurisdiction, "when one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*." *Marshall v. Marshall*, 547 U.S. 293, 311 (2006) (footnote added). Thus, "the court first assuming jurisdiction over property may maintain and exercise that jurisdiction to the exclusion of the other." *Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456, 466 (1939).

The prior exclusive jurisdiction doctrine is premised on the notion that "[t]he possession of the *res* vests the court which has first acquired jurisdiction with the power to hear and determine all controversies relating thereto, and for the time being disables other courts of co-ordinate jurisdiction from exercising a like power." *Farmers' Loan & Trust Co. v. Lake St. Elevated R. Co.*, 177 U.S. 51, 61 (1900). "This rule is essential to the orderly administration of justice, and to prevent unseemly conflicts between courts whose jurisdiction embraces the same subjects and persons." *Merritt v. Am. Steel-Barge Co.*, 79 F. 228, 231 (8th Cir. 1897). When the doctrine is applicable, the Court is bound to treat it as a mandatory rule of judicial abstention, not as a matter

---

[5] The Federal Rules of Civil Procedure authorize a party to challenge a federal court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Courts have recognized a variety of . . . defenses that one normally would not think of as raising subject matter jurisdiction questions when considering a Rule 12(b)(1) motion, including claims that . . . the subject matter is one over which the federal court should abstain from exercising jurisdiction." 5B Arthur R. Miller et al., *Fed. Prac. & Proc. Civ.* § 1350 (3d ed.).

of judicial discretion.  *See Sexton v. NDEX W., LLC*, 713 F.3d 533, 536 n.5 (9th Cir. 2013) (collecting cases); *see also* 1 Elizabeth M. Bosek et al., *Cyc. of Fed. Proc.* § 2:178 (3d ed. 2019) (describing the prior exclusive jurisdiction doctrine as mandatory).

The doctrine of prior exclusive jurisdiction applies in only two circumstances.  First, and most commonly, the doctrine applies when there are multiple proceedings in which different courts are attempting to assert jurisdiction over the same property at the same time.  *See, e.g.*, *United States v. Bank of N.Y. & Trust Co.*, 296 U.S. 463, 480-81 (1936) (holding first-filed state cases took precedence over later-filed federal cases); *Penn Gen. Cas. Co. v. Commonwealth of Penn. ex rel. Schnader*, 294 U.S. 189, 197 (1935) (holding federal court had jurisdiction over first-filed federal suit).  Second, and less commonly, the doctrine applies when a court has acquired some form of specialized, continuing jurisdiction over the property that, even in the absence of a pending case, precludes other courts from exercising jurisdiction over the same property in later cases.  *See, e.g.*, *State Eng'r v. S. Fork Band of the Te-Moak Tribe*, 339 F.3d 804, 810-11 (9th Cir. 2003) (holding federal court lacked jurisdiction where water rights were under state court's continuing jurisdiction pursuant to a seventy year old decree); *In re Trust Created by Hill*, 728 F. Supp. 564, 567-68 (D. Minn. 1990) (holding federal court lacked jurisdiction where state court's continuing jurisdiction and supervisory responsibility over a trust had attached decades earlier).  Defendant Marvin does not argue for the second application, so the Court need only concern itself with the first, more common usage of the doctrine.

The parties seem to agree that for the prior exclusive jurisdiction doctrine to deprive the Court of jurisdiction over this case, the following conditions must be met:  (1) this case and the Louisiana state case must be actions *in rem* or *quasi in rem*, rather than *in personam*;[6] and (2) the

---

[6] "Actions *in personam* and actions *in rem* differ in that the former are directed against specific persons and seek personal judgments, while the latter are directed against the thing or property or status of a person and seek judgment

state action must have commenced prior to this action and proceeded to a degree that the Louisiana state court asserted jurisdiction over the Fund. The Court will now separately take up those issues.

## 1. Nature of This Action

The Court must first determine whether this interpleader action is *in personam* or *in rem*. Over a century ago, the United States Supreme Court appeared to imply that interpleader actions are *in personam*. *See N.Y. Life Ins. Co. v. Dunlevy*, 241 U.S. 518, 521 (1916) (stating an interpleader case "was an attempt to bring about a final and conclusive adjudication of [the plaintiff's] personal rights"). However, subsequent Supreme Court rulings on jurisdiction and service of process have diminished *Dunlevy* and blurred the distinction between actions *in personam* and *in rem*. *See First Tenn. Nat'l Bank, Chattanooga v. Fed. Deposit Ins. Corp.*, 421 F. Supp. 35, 37 (E.D. Tenn. 1976) (summarizing the post-*Dunleavy* nature of interpleader). As a result, the nature of interpleader actions is unclear, and conflicting authority abounds on the issue. *Compare Metro. Prop. & Cas. Ins. Co. v. Shan Trac, Inc.*, 324 F.3d 20, 25 (1st Cir. 2003) ("Interpleader actions are *in personam*, not *in rem*.") *with Gen. Atomic Co. v. Duke Power Co.*, 553 F.2d 53, 57 (10th Cir. 1977) (stating that an interpleader action "is an *in rem* or *quasi in rem* suit"), *and Roland v. Hickman*, No. 2:15-cv-1133-JCM/VCF, 2016 WL 1183085, at *4 (D. Nev. Mar. 28, 2016) (holding that an interpleader action is *quasi in rem*).

The Court need not spend too much time deciding the nature of this action. Defendant Marvin argues that this case is *in rem*, and no party has argued otherwise. In the absence of any argument to the contrary, the Court agrees with Defendant Marvin and finds that this interpleader case is *in rem* because "[t]he Court's jurisdiction is limited to the disposition of the [Fund]. Once

---

with respect thereto as against the world." *Martin v. Wheatley*, 62 F. Supp. 104, 107 (W.D. Ark. 1945). What matters for the present inquiry is whether the state and federal actions are either *in rem* or *in personam*. *Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1258 (9th Cir. 2017) (Wardlaw, J., dissenting). It is unnecessary to draw a narrower distinction between *in rem* and *quasi in rem*. *Id.*

the [Fund] is exhausted, the Court has no more power to adjudicate the parties' rights *[i]n personam*." *Equifax, Inc. v. Luster*, 463 F. Supp. 352, 363 (E.D. Ark. 1978), *aff'd sub nom. Ark. La. Gas Co. v. Luster*, 604 F.2d 31 (8th Cir. 1979).

Next, the Court must determine whether a state forfeiture proceeding commenced under La. R.S. 15:1356 prior to the filing of this case and proceeded far enough that the Louisiana state court asserted jurisdiction over the Fund. If so, the Court will then determine the nature of that proceeding.

### 2. Commencement, Progress, and Nature of State Court Action

Next, the Court must determine whether a state forfeiture proceeding commenced under La. R.S. 15:1356 prior to the filing of this case and proceeded far enough that the Louisiana state court asserted jurisdiction over the Fund. If so, the Court must also determine whether that proceeding is *in rem*.

"Civil and criminal forfeitures have distinct legal purposes, [and] the procedures used to perfect each type of forfeiture are dramatically different." *State v. Edwards*, 2000-1246 (La. 6/1/01), 787 So.2d 981, 991. The most obvious difference is that criminal forfeitures are considered a part of a criminal prosecution and, thus, are subject to criminal procedural rules, whereas civil forfeitures are prosecuted in independent civil actions directly against the offending property. *Id.*

"Civil forfeiture is the process by which governments seize property without compensating its owner, based on its connection with the commission of crime." *Id.* at 990. Civil forfeitures in Louisiana are considered actions *in rem*, and for a court to obtain *in rem* jurisdiction, the government must take possession of the property through an act of either actual or constructive

seizure.  *Id.* at 991.  After the state seizes property for forfeiture, the state will then file a forfeiture complaint and prosecute its claim.  *Id.*; La. R.S. 15:1356(C-D).

Conversely, criminal forfeitures in Louisiana are actions *in personam* that are taken against a criminal defendant.  *Edwards*, 787 So.2d at 991.  "Criminal forfeitures are premised on a punitive theory, whereby forfeiture serves the important penal interests associated with the criminal process."  *Id.* at 990.  Thus, "a criminal conviction is a necessary predicate for any criminal forfeiture."  *Id.* at 991.

As an initial matter, the Court wishes to address an issue that the parties gloss over, namely, whether a forfeiture proceeding was indeed instituted in Louisiana state court before this case was filed.  Defendant Marvin asserts that a forfeiture proceeding was instituted, pointing to the Louisiana seizure warrant, dated April 19, 2018, having preceded this case, which was filed on May 9, 2018.  The seizure warrant states in relevant part that "probable cause exists to believe that the [Fund] is subject to possible forfeiture" and that the district attorney's office "should be allowed to proceed at this time with an assert forfeiture procedure."  (ECF No. 71-5).  However, this permissive language merely authorizes the district attorney's office to initiate a forfeiture proceeding; it does not explicitly open such a proceeding.  Defendant Marvin points to no authority standing for the proposition that a forfeiture proceeding is necessarily initiated when a Louisiana state court issues a seizure warrant, and the Court is unable to locate any such authority.  To the contrary, it appears that the issuance of a seizure warrant does not commence a civil forfeiture proceeding in Louisiana, as all civil cases are initiated by the filing of a pleading.  *See* La. Code Civ. Proc. art. 421 (providing that civil actions are "commenced by the filing of a pleading presenting the demand to a court of competent jurisdiction"); *de la Vergne v. de la Vergne*, 479 So.2d 549, 550 (La. Ct. App. 1985) (same).

Further, the Louisiana racketeering statute provides that "a forfeiture proceeding shall be instituted promptly" after property is seized for forfeiture. *See* La. R.S. 15:1356(C-D). Thus, Louisiana law expressly contemplates that forfeiture proceedings brought under the racketeering statute must be formally commenced sometime after the issuance of a seizure warrant and the subsequent seizure of property for forfeiture. *Id.*; *see also* La. R.S. 40:2608(1)(a) (requiring, in a different forfeiture context, the commencement of forfeiture proceedings after the seizure of property by filing a petition for forfeiture within a certain time after giving the property owner written notice of intent to seek forfeiture); La. R.S. 40:2613(A)(1) (providing, in a different forfeiture context, that an *in rem* forfeiture proceeding may be brought by a district attorney pursuant to a notice of pending forfeiture or a verified petition for forfeiture).

Nothing in the record reflects that Defendant Marvin or any other district attorney formally instituted a forfeiture proceeding in Louisiana state court after the seizure warrant was issued. For example, Defendant Marvin has not provided the Court with a copy of a filed forfeiture complaint or a copy of the docket sheet for a separate forfeiture case asserted against the Fund. At most, the record shows the existence of multiple criminal cases filed by the State of Louisiana against Intervenor Wilson. However, these criminal cases cannot themselves constitute an *in rem* proceeding because they are brought directly against Intervenor Wilson. Moreover, any forfeiture proceeding instituted as part of the criminal cases would be actions *in personam* because *in rem* civil forfeiture cases are prosecuted in separate civil actions directly against the offending property. *Edwards*, 787 So.2d at 991.

The Court notes that the State of Louisiana filed a "motion for civil forfeiture" in one of the above-mentioned criminal cases, on which the state court set a hearing for August 28, 2018. (ECF No. 67-1). On August 28, 2018, in what is listed as docket number "227,688F, Criminal

File 17-4964," the state court quashed the seizure warrant in part. (ECF No. 44-1). The parties provide no information about docket number "227,688F, Criminal File 17-4964." With no other information, the Court cannot tell whether the quashing of the seizure warrant took place in one of the above-mentioned criminal cases against Intervenor Wilson, or in a separate forfeiture proceeding.

The Court is inclined to assume the former because the above-referenced case number includes "criminal" in it, and it seems unlikely that a civil forfeiture proceeding would be assigned a criminal case number. Furthermore, the minutes report for one of the criminal cases against Intervenor Wilson—case number C-227668I—reflects the state court's quashing of the seizure warrant, which lends further credence to the possibility that the seizure warrant was quashed in one of the criminal cases rather than in a separate civil forfeiture proceeding. (ECF No. 44-2). Ultimately, however, the Court need not pursue this issue further because, keeping in mind the narrow nature of the prior exclusive jurisdiction doctrine, *see Seitz v. Fed. Nat'l. Mortg. Ass'n*, 909 F. Supp. 2d 490, 505 (E.D. Va. 2012), the Court declines to guess at, or assume, the existence of a separate civil forfeiture proceeding.

Accordingly, the Court finds that Defendant Marvin has not provided the Court with sufficient evidence to allow a finding that an *in rem* state forfeiture action preceded this case. Thus, the requisites of the prior exclusive jurisdiction doctrine have not been shown, and the Court will not dismiss this case pursuant to that doctrine. As such, the Court will now turn to Defendant Marvin's various abstention arguments.

**B. Abstention**

Defendant Marvin alternatively moves the Court to dismiss this case pursuant to the *Colorado River*, *Pullman*, and *Burford* abstention doctrines.[7]   Intervenor Wilson maintains that abstention is inappropriate under any of these doctrines.[8]

Generally, federal courts have a "virtually unflagging obligation" to exercise their jurisdiction in proper cases. *Colo. River*, 424 U.S. at 817.  This obligation notwithstanding, federal courts may abstain from deciding an issue in order to preserve "traditional principles of equity, comity, and federalism." *Alleghany Corp. v. McCartney*, 896 F.2d 1138, 1142 (8th Cir. 1990). The Supreme Court has established several limited abstention doctrines to preserve these principles. *Beavers v. Ark. State Bd. of Dental Exam'rs*, 151 F.3d 838, 840-41 (8th Cir. 1998). Defendant Marvin argues for the application of three of these doctrines—the so-called *Colorado River*, *Pullman*, and *Burford* doctrines.  The Court will address each in turn, beginning with *Colorado River* and, if necessary, then proceeding to *Pullman* and *Burford*.

### 1. *Colorado River* Abstention

The *Colorado River* doctrine, articulated by the Supreme Court in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), "grants a federal court the discretion to avoid duplicative litigation in federal court of a matter more properly decided in parallel

---

[7] Defendant Marvin does not explicitly reference the *Pullman* and *Burford* abstention doctrines, but he makes what are unmistakably *Pullman* and *Burford* arguments in the *Colorado River* discussion section of his brief and refers to them as reasons for abstention under *Colorado River*.  (ECF No. 75-1, pp. 12-17).  The confusion likely stems from the fact that the Supreme Court's *Colorado River* opinion discussed the requirements of the *Pullman* and *Burford* doctrines in *dicta*, albeit not by name.  *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976) (observing that *Pullman* and *Burford* abstention would be inappropriate under that case's facts).

[8] Intervenor Wilson also devotes a substantial portion of his briefing papers to arguing that abstention is likewise inappropriate under the *Younger* abstention doctrine, articulated by the Supreme Court in *Younger v. Harris*, 401 U.S. 37 (1971).  Although the Court appreciates counsel's briefing efforts, it is unnecessary to address *Younger* abstention because Defendant Marvin has made no argument that can be construed as invoking the *Younger* doctrine.

litigation in state court." *Kingland Sys. Corp. v. Colonial Direct Fin. Grp., Inc.*, 188 F. Supp. 2d 1102, 1107 (N.D. Iowa 2002) (citing *Beavers*, 151 F.3d at 814 n.7). However, "the potential for conflict" between a federal action and a parallel state action does not, by itself, justify application of the *Colorado River* doctrine. *Federated Rural Elec. Ins. Corp. v. Ark. Elec. Coops., Inc.*, 48 F.3d 294, 297 (8th Cir. 1995). Rather, *Colorado River* applies only in "exceptional circumstances" where abstention "would clearly serve an important countervailing interest."[9] *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 14 (1983).

Thus, *Colorado River* imposes two requirements: (1) pending, parallel state and federal actions; and (2) exceptional circumstances justifying abstention. *Kingland*, 188 F. Supp. 2d at 1110. The Court will begin by addressing whether parallel actions exist and, if so, the Court will then determine whether exceptional circumstances are present.

### a. Parallel State and Federal Actions

As a threshold matter, *Colorado River* requires pending, parallel state and federal court actions. *Fru-Con*, 574 F.3d at 535. Parallel actions do not exist simply because of "[t]he pendency of a state claim based on the same general facts or subject matter as a federal claim and involving the same parties." *Id.* "Rather, a substantial similarity must exist between the state and federal proceedings, which . . . occurs when there is a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court." *Id.*

This analysis focuses on the matters as they currently exist, not as they could potentially be modified. *Id.* The Court may consider whether the state and federal actions involve distinct

---

[9] "Because the policy underlying *Colorado River* abstention is judicial efficiency, this doctrine is substantially narrower than are the doctrines of *Pullman*, *Younger* and *Burford* abstention." *Federated Rural Elec.*, 48 F.3d at 298 n.4. Moreover, when a *Colorado River* movant seeks dismissal of the federal action rather than abstention, as Defendant Marvin does in this case, "considerably weightier reasons have to be in place." *Fru-Con Const. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 534 n.7 (8th Cir. 2009).

sources of law, evidentiary showings, measures of damages, and treatment on appeal. *Id.* at 536. Any doubt as to the parallel nature of the state and federal proceedings must be resolved against the application of *Colorado River* abstention. *Id.* at 535.

Defendant Marvin makes no argument that parallel proceedings exist for purposes of *Colorado River* abstention. Moreover, as discussed above, the Court cannot find based on the present record that a forfeiture action is currently pending in Louisiana with respect to the Fund. This is fatal to the analysis. However, even if the Court assumes *arguendo* the existence of a state forfeiture case, there is not a substantial similarity between that and this proceeding because there is not a substantial likelihood that the state proceeding will fully dispose of the claims presented in this case.

In this case, Plaintiff asks the Court to determine Defendants' and Intervenor's competing claims to $255,209.47 in cash. Thereby, Plaintiff characterizes the Louisiana state seizure warrant as a claim made by Defendant Marvin. This warrant initially sought the entirety of the $255,209.47 held by Plaintiff, but the Louisiana state court subsequently quashed the warrant in part, reducing the warrant's scope to $132,000.00. If the Court deferred to the Louisiana state action and allowed Defendant Marvin to seize from Plaintiff $132,000.00 in cash to be adjudicated in a state civil forfeiture proceeding, $123,209.47 would still remain in Plaintiff's custody to be adjudicated in this case, irrespective of how the Louisiana forfeiture proceeding is resolved.

Therefore, the Court finds that there is not a "substantial likelihood that the state proceeding will fully dispose of" the interpleader claim presented in this case. *Id.* at 535. Remaining cognizant that any doubt as to the parallel nature of proceedings defeats the application of *Colorado River*, *see id.*, the Court finds that the Louisiana state action is not parallel to this case within the meaning of *Colorado River* and, thus, *Colorado River* abstention is inappropriate. In light of this finding,

the Court need not determine whether exceptional circumstances exist warranting abstention. However, the Court will do so in the alternative because the parties have also pursued that course.

### b. Exceptional Circumstances

Even assuming *arguendo* that this case and a Louisiana court action are parallel proceedings, *Colorado River* abstention is not appropriate unless exceptional circumstances justify abstention. *Id.* To determine whether exceptional circumstances warrant *Colorado River* abstention, courts look to the following six non-exhaustive factors:

> (1) whether there is a *res* over which one court has established jurisdiction;
>
> (2) the inconvenience of the federal forum;
>
> (3) whether maintaining separate actions may result in piecemeal litigation, unless the relevant law would require piecemeal litigation and the federal court issue is easily severed;
>
> (4) which case has priority—not necessarily which case was filed first but a greater emphasis on the relative progress made in the cases;
>
> (5) whether state or federal law controls, especially favoring the exercise of jurisdiction where federal law controls; and
>
> (6) the adequacy of the state forum to protect the federal plaintiff's rights.

*Id.* at 534.

No one factor is necessarily determinative, and the weight given to each factor may vary from case to case. *Moses H. Cone*, 460 U.S. at 14. However, the balance of these factors is "heavily weighted in favor of the exercise of jurisdiction." *Id.* Ultimately, a court's task "is not to find some substantial reason for the *exercise* of federal jurisdiction . . . rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the surrender of that jurisdiction." *Id.* at 25-26 (emphasis in original).

With that framework in mind, the Court will now address each of the pertinent *Colorado River/Moses H. Cone* factors to determine whether exceptional circumstances warrant *Colorado River* abstention.

### i. Has One Court Established Jurisdiction Over A Res?

Defendant Marvin argues that the Louisiana state court proceeding is *in rem* and, thus, the Louisiana state court has established *in rem* jurisdiction over the Fund via constructive possession. Plaintiff and Intervenor Wilson offer a bevy of arguments to the contrary, including that the state court action is not *in rem* and that the seizure warrant is invalid because the Louisiana state court lacks personal jurisdiction over Plaintiff.

As the Court has previously discussed in this order, Defendant Marvin has not shown that a civil *in rem* proceeding was formally initiated in Louisiana state court prior to the filing of this case such that the state court assumed jurisdiction over the Fund. However, this Court undoubtedly has jurisdiction over the *res*, which is in a bank located within this Court's jurisdiction. Thus, the Court finds that this factor weighs against abstention.

### ii. Is the Federal Forum Inconvenient?

Defendant Marvin argues that the federal forum is inconvenient because all parties other than Plaintiff and Defendant Maxine Wilson are residents of Louisiana. He states that Defendant Maxine Wilson is currently in default and would forfeit her claim to the Fund if the Court enters default judgment against her. He also observes that Plaintiff seeks leave to deposit the Fund into the registry of the Court and to be dismissed from this case. If both Plaintiff and Defendant Maxine Wilson exit this case, Defendant Marvin argues that all remaining parties would be Louisianan and diversity would be destroyed as a result. He also argues that this factor weighs in favor of abstention because most of the parties, evidence, and alleged underlying events are all located in

Louisiana. Intervenor Wilson argues in response that the federal forum is convenient for all parties because the Louisiana state court lacks personal jurisdiction over Plaintiff.

"The question here is not merely which forum is the more convenient, rather it is whether the federal forum is so inconvenient as to militate in favor of abstention." *Globe Indem. Co.*, 816 F. Supp. at 1383 (citing *Evanston Ins. Co. v. Jimco, Inc.*, 844 F.2d 1185, 1195 (5th Cir. 1988)). Thus, it is insufficient for a *Colorado River* movant to demonstrate that the relative inconvenience of the federal forum is based solely on the location of parties or witnesses within the state forum. *See Kingland*, 188 F. Supp. 2d at 1117.

Most of Defendant Marvin's arguments regarding inconvenience concern how Arkansas is an inconvenient forum because various parties, witnesses, and evidence are in Louisiana. However, courts have repeatedly recognized that it is unnecessary to "dismiss or transfer an action where to do so would only shift the inconvenience of the forum from one party to the other." *Id.* Thus, Defendant Marvin's arguments based on the location of parties or witnesses within the state forum do not present exceptional circumstances.

Defendant Marvin's argument relating to the hypothetical destruction of diversity in this case fares no better. Statutory interpleader requires that at least two of the adverse claimants to a contested fund be of diverse citizenship, as defined in 28 U.S.C. § 1332. *Vanguard Fiduciary Tr. Co. v. Stuart*, No. 3:08-CV-44, 2009 WL 2982787, at *2 (D.N.D. Sept. 15, 2009). As Defendant Marvin points out, at least two claimants have been of diverse citizenship since the beginning of this statutory interpleader case, thereby satisfying the diversity requirement and giving this Court subject matter jurisdiction. However, the hypothetical loss of diverse parties is of no import. The Court will retain subject matter jurisdiction even if all diverse claimants eventually exit the case

because the claimants were sufficiently diverse on the date this case was filed. *Blue Cross & Blue Shield of Mo. v. Nooney Krombach Co.*, 170 F.R.D. 467, 471 (E.D. Mo. 1997).

Thus, the Court concludes that there is no evidence establishing that the federal forum is inconvenient, at least not to the level necessary to establish exceptional circumstances for abstention. Therefore, this factor weighs against abstention.

### iii. Will There Be Piecemeal Litigation?

The most predominant factor for the court to consider is whether retaining jurisdiction will result in piecemeal litigation. *Federated Rural Elec.*, 48 F.3d at 297 (citing *Moses H. Cone*, 460 U.S. at 16, 21). "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Keating v. Univ. of S.D.*, 386 F. Supp. 2d 1096, 1103 (D.S.D. 2005) (citing *LaDuke v. Burlington N. R.R. Co.*, 879 F.2d 1556, 1560 (7th Cir. 1989)). "The possibility that duplicate lawsuits will result in conflicting results is an especially important concern, because such results endanger both the 'legitimacy of the court system in the eyes of the public' and 'fairness to individual litigants.'" *Teamsters Local Nos. 175 & 505 Pension Tr. Fund v. IBP, Inc.*, 123 F. Supp. 2d 514, 518 (D.S.D. 2000) (quoting *Lumen Const., Inc. v. Brant Const. Co.*, 780 F.2d 691, 694 (7th Cir. 1985)).

"Duplication and inefficiency alone, however, are not sufficient to warrant abstention," otherwise abstention would be necessarily required in every instance of concurrent litigation and consideration of the *Colorado River/Moses H. Cone* factors would be unnecessary. *Greenwald v. Phillips Home Furnishings Inc.*, No. 4:08CV1128 CDP, 2009 WL 259744, at *3 (E.D. Mo. Feb. 3, 2009). Rather, the risk of conflicting results must rise to a level of "extraordinary circumstance" warranting abstention. *Avera McKennan Hosp. v. EMC - Employers Mut. Cas. Co.*, No. CIV 18-4007, 2018 WL 4290400, at *5 (D.S.D. Sept. 7, 2018). The Eighth Circuit has "advanced [the

federal policy of avoiding piecemeal litigation] by favoring the most complete action." *Federated Rural Elec.*, 48 F.3d at 298.

As the Court has discussed above, Defendant Marvin has not produced evidence from which the Court could find that a separate civil forfeiture proceeding has been formally initiated and is pending in Louisiana state court. Thus, the most complete action, by default, is this case. The federal policy of avoiding piecemeal litigation would not be furthered if the Court defers to a state proceeding that may not even be underway yet. *Id.* Moreover, the Court finds that any risk of conflicting results in this and a state proceeding does not rise to the level of extraordinary circumstances warranting abstention. Therefore, this factor weighs against abstention.

### iv. Which Case Has Priority?

Defendant Marvin argues that this factor weighs in favor of abstention because the Louisiana seizure warrant, dated April 19, 2018, preceded this case, which was filed on May 9, 2018. Intervenor Wilson contends that this case is, at most, neutral because neither case has made substantial progress.

Originally, the Supreme Court identified this factor as "the order in which jurisdiction was obtained by the concurrent forums," *i.e.*, the order in which the cases were filed. *See Colo. River*, 424 U.S. at 818. However, the Supreme Court later clarified that this factor should focus primarily on whether one proceeding has advanced further than the other. *Moses H. Cone*, 460 U.S. at 21.

The Court agrees with Intervenor Wilson that this factor, at worst, is neutral and, at best, weighs against abstention. The filing dates of the federal and state cases are not the appropriate measuring stick of priority. Rather, the important question is whether one case has progressed further than the other, and the Court answers this question in the negative. *Id.* This case has not yet proceeded to the merits of the interpleader claims and, thus, has not progressed terribly far.

However, as far as the Court can tell, the state forfeiture proceeding has not yet even been formally initiated. Undoubtedly, the Louisiana state court issued a seizure warrant, but nothing in the record shows that a forfeiture complaint has since been filed in state court. Even if a state forfeiture proceeding has been instituted, Plaintiff retains possession of the Fund and, thus, no progress has been made in that case. Thus, neither case has progressed substantially further than the other to constitute exceptional circumstances and, accordingly, this factor is of little importance to the determination.

### v. Does State or Federal Law Control?

Defendant Marvin offers no argument on this factor. Intervenor Wilson argues that federal law controls this case, as federal questions exist as to the constitutionality and efficacy of the Louisiana seizure warrant.

When federal law controls most of the parties' claims, that is a "major consideration" against abstention. *Cedar Rapids Cellular Tel., L.P. v. Miller*, 280 F.3d 874, 879 (8th Cir. 2002). On the other hand, "the presence of state law issues will weigh in favor of abstention only in rare circumstances," and even where a case is governed entirely by state law, this "does not provide a reason for abstention." *Federated Rural Elec.*, 48 F.3d at 299. Thus, in cases governed entirely by state law, the "governing law" factor "cannot be afforded any significant weight." *Id.* "Furthermore, as a general rule, 'difficulties and perplexities of state law are no reason for referral of the problem to the state court.'" *Advocat Inc. v. Blanchard*, No. 4:11-cv-0895-JLH, 2012 WL 1893735, at *3 (E.D. Ark. May 24, 2012) (quoting *McNeese v. Bd. of Ed. for Cmty. Unit Sch. Dist. 187, Cahokia, Ill.*, 373 U.S. 668, 673 n.5 (1963)).

This case will likely involve mixed questions of federal and state law. However, the potential presence of questions of Louisiana state law does not rise to the level of exceptional

circumstances warranting abstention, as federal courts routinely apply and interpret the laws of other states. *Crabb v. GoDaddy.com, Inc.*, No. 4:07-cv-4040-HFB, 2010 WL 5890625, at *3 (W.D. Ark. Mar. 29, 2010). Because the presence of state law issues does not present a compelling reason for abstention, *see Federated Rural Elec.*, 48 F.3d at 299, the Court finds that this factor weighs against abstention.

### vi. Is the State Forum Adequate to Protect Plaintiff's Rights?

Defendant Marvin makes no argument as to this factor. Intervenor Wilson argues that Louisiana state court will not protect Plaintiff's rights because, as things stand, Louisiana has no personal jurisdiction over Plaintiff. If Plaintiff submits itself to jurisdiction in Louisiana, Intervenor Wilson argues that Plaintiff would also necessarily submit itself to jurisdiction under the Louisiana seizure warrant, thereby mooting Plaintiff's claim that the warrant's extraterritorial nature prevents it from binding Plaintiff. Accordingly, Intervenor Wilson argues that Plaintiff cannot argue its case in Louisiana state court without compromising its own legal position and, thus, that forum will not adequately protect Plaintiff's rights.

"[T]here is no presumption that a state court is biased or otherwise inadequate to protect the federal plaintiff's rights." *U.S. Fid. & Guar. Co. v. Murphy Oil USA, Inc.*, 21 F.3d 259, 263 (8th Cir. 1994). This inquiry involves "whether the state case includes all of the claims raised by the federal plaintiff in the federal action." *BNSF Ry. Co. v. Hall Hauling, LLC*, No. 4:17-cv-2732-JMB, 2018 WL 1508864, at *4 (E.D. Mo. Mar. 27, 2018). Thus, a court choosing to abstain under *Colorado River* does so based on the belief "that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Moses H. Cone*, 460 U.S. at 28. This factor weighs either for or against abstention only when one forum

is inadequate to protect a party's rights; if both forums are adequate, the factor is neutral. *Gov't Emps. Ins. Co. v. Simon*, 917 F.2d 1144, 1149 (8th Cir. 1990).

As the Court discussed above, a forfeiture proceeding in Louisiana state court would not fully resolve all issues presented in this case because the seizure warrant was partially quashed. Thus, even if the Court deferred to the state court and allowed Defendant Marvin to take possession of $132,000.00 of the Fund for adjudication in a state forfeiture proceeding, $123,209.47 would still remain in Plaintiff's custody to be adjudicated in this case, irrespective of how the Louisiana forfeiture proceeding is resolved. For this reason, a forfeiture proceeding in Louisiana would not provide "an adequate vehicle for the *complete* and prompt resolution of the issues between the parties." *Moses H. Cone*, 460 U.S. at 28 (emphasis added). Accordingly, the Court finds that this factor weighs against abstention.

### vii. Conclusion

After considering the pertinent factors "in a pragmatic, flexible manner with a view to the realities of the case at hand," *id.* at 21, and weighing the balance of those factors "heavily . . . in favor of the exercise of jurisdiction," *id.* at 16, the Court concludes that exceptional circumstances do not exist warranting *Colorado River* abstention. Thus, the Court finds that Defendant Marvin has not shown that *Colorado River* abstention is appropriate in this case and the Court declines to dismiss the case pursuant to *Colorado River*.

The Court will now address the parties' arguments on *Pullman* abstention and, if necessary, will later turn to *Burford* abstention.

### 2. *Pullman* Abstention

The *Pullman* doctrine, articulated by the Supreme Court in *Railroad Commission of Texas v. Pullman Company*, 312 U.S. 496 (1941), provides that "when a federal constitutional claim is

premised on an unsettled question of state law, the federal court should stay its hand in order to provide the state courts an opportunity to settle the underlying state-law question and thus avoid the possibility of unnecessarily deciding a constitutional question." *Harris Cnty. Comm'rs Court v. Moore*, 420 U.S. 77, 83 (1975). In other words, *Pullman* abstention is proper "when a federal constitutional issue might be mooted by a state-court determination of pertinent questions of [unclear] state law." *Bob's Home Serv., Inc. v. Warren Cnty.*, 755 F.2d 625, 628 (8th Cir. 1985).

This doctrine is applicable only when the issue of state law is unsettled and is "sufficiently likely" to be subject to an interpretation that will avoid or modify the federal constitutional question. *Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 512 (1972). If the state law is unambiguous or if there is no obvious, reasonable construction of the state law that would resolve the issues in the case, then *Pullman* abstention does not apply. *City of Houston v. Hill*, 482 U.S. 451, 468 (1987).

To determine the applicability of *Pullman*, courts consider multiple factors, including: (1) the effect abstention would have on the rights to be protected by considering the nature of both the right and necessary remedy; (2) available state remedies; (3) whether the challenged state law is unclear; (4) whether the challenged state law is fairly susceptible to an interpretation that would avoid any federal constitutional question; and (5) whether abstention will avoid unnecessary federal interference in state operations. *Beavers*, 151 F.3d at 841. The fifth factor incorporates two distinct considerations: (1) whether there is a pending state action that will be disrupted, and (2) whether federal intervention would interfere with state procedures and policies in areas of special state interest. *George v. Parratt*, 602 F.2d 818, 822 (8th Cir. 1979).

Defendant Marvin argues that *Pullman* abstention is proper because Intervenor Wilson has asserted in this case that the seizure warrant violates the Louisiana Constitution. Defendant Marvin

argues that Intervenor Wilson is a party to the state proceeding and that he can raise his state-constitutional argument in state court. Defendant Marvin asserts that the constitutional issue in this case would be mooted if Louisiana state court agrees with Intervenor Wilson's position. Intervenor Wilson contends in response that *Pullman* abstention is improper because Plaintiff is not a party to any underlying state case and because Louisiana has no personal jurisdiction over Plaintiff, making Louisiana an inadequate forum to resolve the issues in this case.

*Pullman* abstention is inappropriate in this case because Defendant Marvin has not argued that the state law at issue is unclear and, more importantly, has not offered a reasonable limiting construction of the state law that would resolve the federal issues in this case. *Gralike v. Cook*, 996 F. Supp. 889, 900 (W.D. Mo. 1998) (denying *Pullman* abstention when the movant failed to offer any limiting construction of the state law at issue). Instead, his argument is simply that the Court should let Intervenor Wilson make his state-constitutional arguments in Louisiana state court rather than in this Court because no Louisiana state court seems to have spoken on this issue before. However, the Supreme Court has counseled district courts to not abstain under *Pullman* simply to give a state court the first opportunity to decide a federal constitutional claim. *See Zwickler v. Koota*, 389 U.S. 241, 251 (1967) ("[A]bstention cannot be ordered simply to give state courts the first opportunity to vindicate the federal claim."). Moreover, the parties have not discussed or even acknowledged the various requisite factors for *Pullman* abstention in the Eighth Circuit, leaving the Court unable to conclude that *Pullman* abstention is appropriate in this case. *See Phelps-Roper v. Heineman*, 710 F. Supp. 2d 890, 904-05 (D. Neb. 2010) (declining to abstain under *Pullman* when the parties did not address the *Pullman* factors).

Accordingly, the Court finds that *Pullman* abstention is not appropriate in this case. Consequently, the Court will now address the parties' arguments on the *Burford* doctrine.

### 3. *Burford* Abstention

The *Burford* doctrine, articulated by the Supreme Court in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), provides, in a nutshell, that "a federal court should abstain when the action before it involves matters of state law best left to the state alone." *Middle S. Energy, Inc. v. Ark. Pub. Serv. Comm'n*, 772 F.2d 404, 417 (8th Cir. 1985). However, this is "too generalized a statement to be useful as a definition of when this kind of abstention is proper." Vikram David Amar, *Fed. Prac. & Proc. Juris.* § 4244 (3d ed. 2019). The Supreme Court has more helpfully summarized the *Burford* doctrine as follows:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989). Thus, the *Burford* doctrine is intended to prevent federal courts from "bypassing a state administrative scheme and resolving issues of state law and policy that are committed in the first instance to expert administrative resolution." *Adrian Energy Assoc. v. Mich. Pub. Serv. Comm'n*, 481 F.3d 414, 423 (6th Cir. 2007) (citing *New Orleans*, 419 U.S. at 361-64).

"*Burford* abstention applies when a state has established a complex regulatory scheme supervised by state courts and serving important state interests, and when resolution of the case demands specialized knowledge and the application of complicated state laws." *Bilden v. United Equitable Ins. Co.*, 921 F.2d 822, 825 (8th Cir. 1990). However, *Burford* abstention is not appropriate simply because there "exists [a complex state administrative] process, or even in all cases where there is a potential for conflict with state regulatory law or policy." *New Orleans*, 419 U.S. at 362. "Ultimately, what is at stake is a federal court's decision, based on a careful

consideration of the federal interests in retaining jurisdiction over the dispute and the competing concern for the 'independence of state action,' that the State's interests are paramount and that a dispute would best be adjudicated in a state forum." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996) (internal citation omitted). "This balance only rarely favors abstention, and the power to dismiss recognized in *Burford* represents an extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it." *Id.* (internal quotation marks omitted).

Defendant Marvin concedes that he does not argue for *Burford* abstention based on any agency action but, rather, that he does so solely based on the existence of difficult issues of state law—regarding the validity and constitutionality of the Louisiana seizure warrant—which bear on policy problems of substantial public import whose importance transcends the result in this case, namely, Louisiana's interest in securing restitution for victims of crimes. (ECF No. 67, pp. 12-13). However, this argument improperly attempts to divorce the first *Burford* application from its underlying foundation, that *Burford* abstention is intended to prevent federal courts from encroaching on specialized state courts' supervision of complex administrative or regulatory schemes. *Bilden*, 921 F.2d at 825.

This case "does not involve any complex regulatory scheme, nor does it demand the delicate balancing of state interests typically found in *Burford* abstention cases." *Doe v. McCulloch*, 835 F.3d 785, 788 (8th Cir. 2016); *see also New Orleans*, 491 U.S. at 362 (stating that "*Burford* is concerned with protecting complex state administrative processes from undue federal interference"). Rather, this case could involve the resolution of whether a Louisiana state court served a valid seizure warrant on Plaintiff, an out-of-state bank, for seizure of out-of-state

property.[10]  "The danger which *Burford* abstention avoids—creating an opportunity to overturn a prior state court or agency determination by seeking federal court review, thereby disrupting a state administrative apparatus—is simply not present in this case." *Dittmer v. Cnty. of Suffolk*, 146 F.3d 113, 117 (2d Cir. 1998).

Defendant Marvin's reading of *Burford* would permit litigants to make a host of abstention arguments that bear no relation to a complex administrative or regulatory scheme, merely because a party believes that a state proceeding involves issues of public policy that are more important than the federal action.  This would improperly and vastly expand *Burford*'s "extraordinary and narrow" scope.  *See Winner Rd. Properties, LLC v. BMO Harris Bank, N.A.*, No. 4:16-CV-1395 CAS, 2019 WL 1200519, at *3 (E.D. Mo. Mar. 14, 2019) (citing *Melahn v. Pennock Ins., Inc.*, 965 F.2d 1497, 1506 (8th Cir. 1992)).

In sum, Defendant Marvin has not identified any complex administrative or regulatory scheme which the Court would infringe on in this case.  Therefore, *Burford* abstention is inappropriate.

## III.  CONCLUSION

For the above-stated reasons, the Court finds that Separate Defendant J. Schuyler Marvin's Amended Motion to Dismiss (ECF No. 75) should be and hereby is **DENIED**.

**IT IS SO ORDERED**, this 24th day of September, 2019.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge

---

[10] The Court expresses no opinion as to that issue's merits or whether resolution of that issue will ultimately be necessary in this case.